```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                        :
YUSIN BRAKE CORPORATION and YUN SHENG   :
INDUSTRY COMPANY, LTD.,                  :
                          Plaintiffs,   :      13 Civ. 9223 (DLC)
                                        :
              -v-                       :      OPINION AND ORDER
                                        :
MOTORCAR PARTS OF AMERICA, INC.,        :
                          Defendant.    :
                                        :
---------------------------------------X
```

APPEARANCES

For the Plaintiffs:

Matthew P. Allen
Miller, Canfield, Paddock and Stone, PLC
150 West Jefferson, Suite 2500
Detroit, MI 48226


For the Defendant:

Michael F. Perlis, Cary J. Economou, and F. Phillip Hosp
Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Gregory T. Casamento, and William D. Foley
Locke Lord LLP
Three World Financial Center
New York, NY 10281



DENISE COTE, District Judge:

    Yusin Brake Corporation ("Yusin") and Yun Sheng Industry

Company, Ltd. ("Yun Sheng") (collectively "Plaintiffs") filed

this action against Motorcar Parts of America, Inc. ("Motorcar")

seeking $3 million for unpaid invoices.  The purchase orders for
the goods in question were signed by two entities: Fenwick
Automotive Products Limited ("Fenwick"), a subsidiary of
Motorcar, and Motorcar.  Since the events giving rise to the
causes of action, Fenwick has commenced bankruptcy proceedings.

Motorcar moved to dismiss the operative complaint,
contending, inter alia, that the automatic stay of the Fenwick
bankruptcy extends to the present action.  For the reasons
explained below, the motion is denied.


BACKGROUND

The following facts are as alleged in the operative
complaint and are assumed to be true.  Plaintiffs are Taiwan-
based companies that manufacture automotive parts for passenger
and commercial vehicles.  Motorcar is a New York corporation
based in Torrance, California that manufactures and distributes
automotive parts in North America.  Fenwick was, prior to its
acquisition by Motorcar, incorporated and based in Canada.

From 2008 onwards, Plaintiffs sold automotive parts to
Fenwick.  Typically, to purchase such parts, Fenwick would send
to Plaintiffs purchase orders, which were signed by a Fenwick
representative and set forth the type, quantity, and cost of the
desired parts.  Plaintiffs would then deliver the parts in
accordance with the purchase orders, and issue invoices to

Fenwick for the amount owed.

In May 2011, Motorcar acquired all of the common stock shares of Fenwick, and Fenwick became its wholly owned subsidiary.  Following the acquisition, Motorcar moved many of Fenwick's business operations to Motorcar's California location, where its agents assumed control of the operations.  Motorcar received the shipments sent by Plaintiffs.

In 2012, Fenwick began to fall behind on its payments. Motorcar's senior executives agreed that, in exchange for Plaintiffs' continued shipments of parts, Motorcar would be a co-obligor on all future purchase orders, which it would counter-sign.  Beginning in April 2012, the purchase orders were signed by both Fenwick and Motorcar.

An example of such a purchase order, dated December 2012, is offered as illustrative: the first page lists, in the top left corner, "Fenwick Automotive Products" with an address of Torrance, California.  Yusin is listed as the supplier, and the "ship to" field lists Fenwick, again with an address of Torrance, California.  The remainder of the first page, and half of the second page, is devoted to terms and conditions of the order, all of which are specific to Fenwick.  The remainder of the order lists the parts requested, by type, quantity, and cost.  The final page computes the total cost for the requested parts.  Under that total appears the signature of a Motorcar

3

employee, "Bryan Cain," whose title is listed as "VP Product Development" and email is listed as "bcain@motorcarparts.com." The signature is time stamped.

Between April 2012 and May 2013, 96 such purchase orders were sent to Plaintiffs, each of which was signed by Fenwick and counter-signed by a Motorcar senior executive.  For each of these purchase orders, Plaintiffs delivered the parts to Fenwick and Motorcar, pursuant to the details of each purchase order, and the parts were accepted by Fenwick and Motorcar.

Plaintiffs issued invoices and statements of account for these purchase orders to Fenwick and Motorcar.  In so doing, Plaintiffs advised Fenwick and Motorcar of outstanding balances due.  Neither Motorcar nor Fenwick object to the invoices.  On several occasions, Motorcar acknowledged the outstanding balances due and promised to bring the account current.

By late 2012 and early 2013, Fenwick and Motorcar were again delinquent.  Senior Motorcar executives promised Plaintiffs that, in exchange for continued shipments of parts, Motorcar would honor the terms of the prior purchase orders and pay the outstanding debt.

On February 25, 2013, Plaintiffs' representatives met with Selwyn Joffe ("Joffe"), Motorcar's Chairman, President and Chief Executive Officer, in Torrance, California ("February 2013 Meeting").  Joffe acknowledged the outstanding debt, and agreed,

4

on behalf of both Fenwick and Motorcar, to (1) pay all
outstanding debt for parts shipped by Plaintiffs, and (2) to pay
cash-on-delivery for all future shipments of parts.

At the February 2013 Meeting, Plaintiffs also asked Joffe
about Fenwick's financial status.  Joffe "represented that
[Motorcar] was raising capital to pay for all outstanding
amounts owed to Plaintiffs at that time, that Fenwick was in a
strong financial position going forward, and that [Motorcar]
stood behind Fenwick and was committed to paying Plaintiffs the
outstanding amounts owed."  Based on Joffee's representations,
Plaintiffs continued to deliver parts to Fenwick and Motorcar.

Unbeknownst to Plaintiffs, at the time of the February 2013
Meeting, Fenwick was on the verge of bankruptcy.  Additionally,
Joffe had, prior to the February 2013 Meeting, sold his stock in
Fenwick and Motorcar.  Joffe did not inform Plaintiffs of
Fenwick's financial condition or his stock sale at the February
2013 Meeting.  Additionally, in further meetings and
communications on April 2 and April 4, 2013, other senior
executives at Motorcar did not disclose Fenwick's financial
condition.

On June 10, Fenwick filed for bankruptcy.  Plaintiffs have
filed proofs of claim in the bankruptcy proceeding.

On December 31, Plaintiffs filed the present suit.
Motorcar moved to dismiss.  On March 24, 2013, Plaintiffs filed

a First Amended Complaint ("Amended Complaint"), which is the operative complaint for present purposes.

The Amended Complaint consists of seven counts, all pleaded in the alternative.  Count One is for account stated; it alleges that Plaintiffs sent account statements to Motorcar stating the amounts owed, and that Motorcar failed to object within a reasonable time.

Counts Two and Three are for breach of contract.  Count Two alleges that Motorcar's act of signing the purchase orders created enforceable contracts between Plaintiffs and Motorcar. Count Three alleges that the oral promise made at the February 2013 Meeting -- in which Joffe stated that, in exchange for Plaintiffs' continued shipment of goods, Motorcar would pay the outstanding debt owed to Plaintiffs -- constitutes an enforceable contract between Plaintiffs and Motorcar.

Counts Four and Five are for promissory estoppel and unjust enrichment.  Count Four alleges that Motorcar promised to pay for all parts supplied by Plaintiffs -- including at the February 2013 Meeting -- and that Plaintiffs reasonably relied on promises to continue delivering parts, to their detriment. Count Five alleges that Motorcar received a benefit when it received and accepted parts from Plaintiffs, and that -- because Motorcar has not paid Plaintiffs for these parts -- it would be unjust for Motorcar to retain these benefits without

compensating Plaintiffs.

Count Six is styled "Misrepresentation / Fraud / Fraudulent Inducement."  Count Six alleges that Motorcar made knowing material misstatements, misrepresentations, and omissions to deceive Plaintiffs into believing that they would be paid, so that Plaintiffs would continue to make shipments.  Specifically, Plaintiffs point to the February 2013 Meeting, in which Joffe stated that Fenwick was in a strong financial condition going forward.

Count Seven is styled "Silent Fraud / Fraudulent Concealment."  It alleges that Joffe intentionally failed to disclose material facts in the February 2013 Meeting -- specifically the financial condition of Fenwick and Joffe's sale of his stock options -- and that other senior executives intentionally failed to disclose material facts in subsequent communications on April 2 and April 4.  Additionally, Count Seven alleges that Motorcar had a duty to disclose these material facts because (1) Plaintiffs made a specific inquiry into Fenwick's financial status and (2) because Motorcar possessed superior knowledge of facts not readily available to others and knew Plaintiffs were acting in reliance.

Yusin contends that Motorcar owes $2,037,990.76, plus interest, costs, and fees.  Yun Sheng contends that Motorcar owes $1,274,982.58, plus interest, costs, and fees.

7

On April 3, Motorcar moved to dismiss the Amended
Complaint.  The motion was fully submitted as of April 27.[1]


DISCUSSION

Motorcar's motion consists of three different theories in
support of dismissal.  First, Motorcar invokes the automatic
stay provisions of § 362(a)(3) of the Bankruptcy Code.  Second,
Motorcar contends that all seven claims are inadequately pleaded
and thus require dismissal under Rule 12(b)(6), Fed.R.Civ.P.
Third, Motorcar contends that the failure to join Fenwick
requires dismissal under Rules 12(b)(7) and Rule 19,
Fed.R.Civ.P.  This Opinion rejects each theory.


A. Automatic Bankruptcy Stay

Motorcar contends that this action is subject to an
automatic stay under Subsection 362(a)(3) of the Bankruptcy
Code.  11 U.S.C. § 362(a)(3).  In the ordinary course, Section
362(a) of the Bankruptcy Code "operates as a stay" of certain
actions and proceedings, as defined in the particular
subsections of the statute.  Subsections 362(a)(1) and 362(a)(2)
generally extend the stay to an "action or proceeding against

---

[1] At the initial pretrial conference on May 2, the Court offered
its preliminary view that the motion to dismiss would likely be
denied.  Accordingly, a Pretrial Scheduling Order was entered on
the same day.

the debtor" that could have been commenced before the
bankruptcy, to an action or proceeding "to recover a claim
against the debtor" that arose prior to the bankruptcy, or "the
enforcement, against the debtor or against property of the
estate, of a judgment obtained before" the bankruptcy.  11
U.S.C. §§ 362(a)(1) & 362(a)(2).

Subsection 362(a)(3), invoked here, extends the stay to
"any act to obtain possession of property of the estate or of
property from the estate or to exercise control over property of
the estate."  11 U.S.C. § 362(a)(3).  Property of the estate, in
turn, includes "all legal or equitable interests of the debtor
in property as of the commencement of the case."  11 U.S.C.
§ 541(a)(1).  "Every conceivable interest of the debtor, future,
nonpossessory, contingent, speculative, and derivative, is
within the reach of § 541."  Chartschlaa v. Nationwide Mut. Ins.
Co., 538 F.3d 116, 122 (2d Cir. 2008) (citation omitted).

As a general matter, "stays pursuant to § 362(a) are
limited to debtors and do not encompass non-bankrupt co-
defendants."  Teachers Ins. & Annuity Ass'n v. Butler, 803 F.2d
61, 65 (2d Cir. 1986) (compiling cases across the circuit courts
of appeals); see also Mar. Elec. Co., Inc. v. United Jersey
Bank, 959 F.2d 1194, 1205 (3d Cir. 1991) ("[T]he automatic stay
is not available to non-bankrupt co-defendants of a debtor even
if they are in a similar legal or factual nexus with the

debtor.").  "The automatic stay can apply to non-debtors, but
normally does so only when a claim against the non-debtor will
have an immediate adverse economic consequence for the debtor's
estate."  Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d
Cir. 2003).  "Examples are a claim to establish an obligation of
which the debtor is a guarantor, a claim against the debtor's
insurer, and actions where there is such identity between the
debtor and the third-party defendant that the debtor may be said
to be the real party defendant."  Id. at 287-88 (citation
omitted).

The automatic stay provision under 11 U.S.C. § 362(a)(3) is
inapplicable here.  To begin, this suit is brought not against
the debtor, Fenwick, but against a non-bankrupt entity,
Motorcar.  Moreover, there is no plausible argument that this
suit will have immediate adverse economic consequence for
Fenwick's estate.  All causes of action in the Amended Complaint
-- account stated, breach of contract, quasi-contract, and fraud
-- are pleaded to impose liability on Motorcar directly and
independently of Fenwick.  Unlike the examples cited in Queenie,
Motorcar is alleged to be neither a guarantor nor insurer of
Fenwick.

Motorcar suggests that "factual issues litigated in this
case could be binding upon the debtor's estate or lead to
inconsistent results."  This argument fails.  Motorcar does not

10

adequately explain how a verdict for or against Motorcar would be binding on Fenwick.

In its reply, Motorcar shifts its focus.  Its principal argument is that Motorcar is sued as a guarantor on Fenwick's dealings, and further that -- because a guarantor's liability is contingent on the underlying obligor's liability -- the automatic stay applies.

This argument fails to acknowledge the distinction under New York law between guarantors and co-obligors.  See, e.g., Am. Trading Co., Inc. v. Fish, 364 N.E.2d 1309, 1311 (N.Y. 1977).  "A guaranty is an agreement to pay a debt owed by another which creates a secondary liability and thus is collateral to the contractual obligation.  The principal debtor is not a party to the guaranty and the guarantor is not a party to the principal obligation." Shire Realty Corp. v. Schorr, 390 N.Y.S.2d 622, 625 (2d Dep't 1977).  "The nature of the obligation depends upon the parties' intention." Brewster Transit Mix Corp. v. McLean, 565 N.Y.S.2d 316, 317 (3d Dep't 1991).  Here, Plaintiffs allege that Motorcar is liable as a principal.  Thus, Motorcar may not invoke the automatic bankruptcy stay.


B. Adequacy of Pleading

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept all allegations in the complaint as

11

true and draw all inferences in the non-moving party's favor."
LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475
(2d Cir. 2009).  A complaint must do more, however, than offer
"naked assertions devoid of further factual enhancement," and a
court is not "bound to accept as true a legal conclusion couched
as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (citation omitted).

The claims raised in the Amended Complaint require
application of both the ordinary and heightened pleading
standards in the Federal Rules of Civil Procedure.  The ordinary
pleading standard is set forth in Rule 8(a), Fed.R.Civ.P.  The
plaintiff must make "a short and plain statement of the claim
showing that the pleader is entitled to relief".  Under Rule
8(a), to survive a motion to dismiss, "a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face."  Iqbal, 556 U.S. at 678
(citation omitted).  Applying this plausibility standard is "a
context-specific task that requires the reviewing court to draw
on its judicial experience and common sense."  Id. at 679.
Relevant considerations include "the full factual picture
presented by the complaint, the particular cause of action and
its elements, and the existence of alternative explanations so
obvious that they render plaintiff's inferences unreasonable."

L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011).

The heightened pleading standard is set forth in Rule 9(b), Fed.R.Civ.P.  For claims alleging fraud, the plaintiffs must "state with particularity the circumstances constituting fraud or mistake."  In order to comply with Rule 9(b), a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Nakahata v. New York-Presbyterian Healthcare System, Inc., 723 F.3d 192, 197-98 (2d Cir. 2013) (citation omitted).


### 1. Counts Two and Three: Breach of Contract

Motorcar moves first to dismiss the breach of contract claims.  "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).  In this case, only the first element is in dispute. The question is whether Plaintiffs have adequately alleged that Motorcar entered into an agreement with Plaintiffs.

Count Two, which emphasizes Motorcar's signature on the purchase orders, adequately pleads the existence of an agreement

to state a breach of contract claim.  All of the purchase orders involve the "transaction of goods," and are therefore covered by Article 2 of the Uniform Commercial Code ("UCC").  N.Y. U.C.C. Law § 2-102.  The UCC sets forth the following general principles for the formation of contracts:

> (1) A contract for sale of goods may be made in <u>any manner sufficient to show agreement</u>, including conduct by both parties which recognizes the existence of such a contract.
>
> (2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.
>
> (3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

N.Y. U.C.C. Law § 2-204 (emphasis added).  Additionally, in most circumstances, "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods . . . ."  N.Y. U.C.C. Law § 2-206.  When Motorcar signed purchase orders that offered to buy goods (specified by type, quantity, and cost), and Plaintiffs accepted by shipping conforming goods, this is conduct "sufficient to show agreement."  N.Y. U.C.C. Law § 2-204(1).  Thus, Plaintiffs have adequately pleaded that each purchase order signed by Motorcar constitutes an enforceable

contract between Motorcar and Plaintiffs.[2]

Motorcar argues that the only plausible interpretation of these purchase orders is that Motorcar signed on behalf of Fenwick.  Motorcar points to the heading of the purchase order, which lists Fenwick.  It further points to the terms of the order, all of which are specific to Fenwick.

This argument is insufficient to dismiss Count Two.  The Plaintiffs' pleading has given adequate notice to Motorcar of their theory that Motorcar signed on its own behalf and shown why this claim is plausible.  According to the Amended Complaint, Motorcar shifted Fenwick's operations to its Torrance, California location and received the parts shipments.  And, while the purchase order lists Fenwick's name in the heading, the listed address is Torrance, California.

Count Three, which emphasizes Joffe's oral promise at the February 2013 Meeting, adequately pleads the existence of an agreement to state a breach of contract claim.  In order for an enforceable contract to exist, "there must be an offer, acceptance of the offer, consideration, mutual assent, and an

---

[2] In its opening brief, Motorcar suggested that the purchase orders were unenforceable under the Statute of Frauds.  It appears to have abandoned that argument in its reply.  In any event, because the purchase orders were followed by invoices sent to Motorcar and retained without objection, they plausibly fall within the merchants exception to the Statute of Frauds provision of the UCC.  See Bazak Int'l Corp. v. Mast Indus., Inc., 535 N.E.2d 633, 636–38 (1989).

intent to be bound." <u>Civil Serv. Emps. Ass'n, Inc. v. Baldwin
Union Free School Dist.</u>, 924 N.Y.S.2d 126, 128 (2d Dep't 2011)
(citation omitted).  Moreover, under New York law, an oral
agreement is enforceable, as relevant here, unless "the
agreement by its terms is not to be performed within one year
from the making thereof." <u>Cron v. Hargro Fabrics, Inc.</u>, 694
N.E.2d 56, 58 (N.Y. 1998) (citation omitted).  "[T]his provision
of the Statute of Frauds [] encompass[es] only those contracts
which, by their terms, have absolutely no possibility in fact
and law of full performance within one year." <u>Id.</u> (citation
omitted).  Here, Joffe made an offer to pay all outstanding and
future debts on purchase orders, with the intent to be bound by
the offer; Plaintiffs accepted the offer and manifested mutual
assent; and the consideration was Plaintiffs' continued supply
of automotive parts.  Moreover, full performance was possible in
one year.

Motorcar's principal response is as follows.  Its oral
promise was a "guarantee" on Fenwick's dealings, and a guaranty
must be in the form of a written instrument.  Thus, Motorcar
argues, Joffe's oral promise is insufficient to create an
enforceable contract.

This argument suffers from a flawed premise.  As noted
above, Motorcar's liability is not based on the allegation that
it acted as a guarantor on Fenwick's purchase orders but rather

16

that it acted as a co-obligor on the same purchase orders.

Thus, Count Three shall not be dismissed.


    2. Counts Six and Seven: Fraud

    Motorcar has moved to dismiss Plaintiffs' fraud claims in
Counts Six and Seven.  Although styled in various ways in the
Amendment Complaint, Plaintiffs discuss these claims as "fraud"
and "fraudulent concealment" respectively in their opposition
papers.  They are analyzed as such here.

    The elements of fraud under New York law are (1) a material
misrepresentation of a fact, (2) scienter, (3) justifiable
reliance by the plaintiff, and (4) damages.  City of New York v.
Smokes-Spirits.Com, Inc., 541 F.3d 425, 454 (2d Cir. 2008),
rev'd on other grounds sub nom. Hemi Group, LLC v. City of New
York, 130 S. Ct. 983 (2010).  The fraud claim must be pleaded
with particularity under Rule 9(b), Fed.R.Civ.P.  See ATSI
Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d
Cir. 2007).

    Count Six's fraud claim is adequately pleaded under Rule
9(b), Fed.R.Civ.P.  Plaintiffs identify with particularity the
February 2013 Meeting, in which Joffe made the statement that
"Fenwick was in a strong financial position going forward."
Plaintiffs allege that this was a material misstatement of fact,
as Fenwick was on the verge of bankruptcy -- a critical issue

                              17

given Plaintiffs' concerns about continuing to supply Fenwick and Motorcar.  Scienter is adequately pleaded, as Joffe was in a position to know Fenwick's financial status and had recently sold his stock in Fenwick and Motorcar.  Moreover, Plaintiffs were damaged as they fulfilled approximately $1 million in purchase orders following the February 2013 Meeting.

The only disputed element relates to justifiable reliance. Whether a fraud plaintiff's reliance was justifiable depends on "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003).  "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."  Crigger v. Fahnestock & Co., 443 F.3d 230, 235 (2d Cir. 2006) (citation omitted).  Therefore,

> where the representation relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances therefore would be unjustifiable.

Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1542 (2d Cir. 1997) (citation omitted).  "Only when matters are

18

held to be peculiarly within defendant's knowledge is it said
that plaintiff may rely without prosecuting an investigation, as
he had no independent means of ascertaining the truth."
Crigger, 443 F.3d at 234 (citation omitted).  Information is
peculiarly within the other party's knowledge "where a party
would face high costs in determining the truth or falsity of an
oral representation and those costs are sufficiently great to
render reliance upon the representation reasonable."  Warner
Theatre Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co., 149
F.3d 134, 136 (2d Cir. 1998) (citation omitted).  Even then,
sophisticated business parties are charged with an additional
duty to protect themselves:

> Where . . . a party has been put on notice of the
> existence of material facts which have not been
> documented and he nevertheless proceeds with a
> transaction without securing the available
> documentation or inserting appropriate language in the
> agreement for his protection, he may truly be said to
> have willingly assumed the business risk that the
> facts may not be as represented.  Succinctly put, a
> party will not be heard to complain that he has been
> defrauded when it is his own evident lack of due care
> which is responsible for his predicament.

Lazard Freres & Co., 108 F.3d at 1543 (citation and emphasis
omitted).  Nonetheless, even sophisticated plaintiffs are not
required as a matter of law to "conduct their own audit" or
"subject [their counterparties] to detailed questioning."  DDJ
Mgmt., LLC v. Rhone Group LLC, 931 N.E.2d 87, 92-93 (N.Y. 2010).
Moreover, because justifiable reliance "involve[s] many factors

to consider and balance, no single one of which is dispositive," it is "often a question of fact for the jury rather than a question of law for the court."  STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC, 648 F.3d 68, 81 (2d Cir. 2011) (citation omitted).

Plaintiffs have adequately pleaded the element of justifiable reliance.  Upon direct questioning, Joffe stated that Fenwick was in a strong financial position.  This information is peculiarly within Motorcar's knowledge, as Plaintiffs would likely face high costs in verifying the accuracy of Joffe's statement.  Moreover, reliance on this statement, when made by the chief executive of the parent company with respect to a subsidiary, does not reflect lack of due care, even by a sophisticated party.

In response, Motorcar points to its February 15, 2013 SEC filing, which acknowledges some of Fenwick's financial troubles. In relevant part, the SEC filing reads as follows:

> Our [Fenwick] subsidiary continues to need capital to execute its undercar product line turnaround plan, and we cannot assure that such capital will be available.
>
> Our implementation of our undercar product line turnaround plan for [Fenwick] has taken longer and cost more than initially anticipated.  Our ability to successfully implement this plan and the timing of our implementation of this plan will depend on, among other things, our customer and vendor support and the financial resources that are or will become available for implementation of this plan, including capital or other support (if any) that we may provide to

20

> [Fenwick].  [Fenwick] continues to face capital and
> liquidity concerns, and we have only agreed to (and
> under the Parent Company Financing Agreement are only
> permitted to) support those in specific limited
> circumstances and cannot assure that we will do so in
> any other circumstances in the future or that
> [Fenwick] will have or be able to obtain significant
> capital to implement its plan.

Pointing to this public filing, Motorcar argues that Plaintiffs were on notice of Fenwick's financial issues and any reliance by a sophisticated party on Joffe's representations was unjustifiable.

The SEC filing does not warrant dismissal of the fraud claim.  While the Court can take judicial notice of the SEC filing,[3] consideration of the filing does not alter the conclusion that Plaintiffs have adequately pleaded reliance. The SEC filing, dated February 15, 2013, acknowledges that Motorcar would support Fenwick in "specific limited circumstances."  Ten days later, Joffe stated that Motorcar would pay off the outstanding purchase orders.  It is plausible that Plaintiffs understood Joffe to be stating that Motorcar would support Fenwick in this circumstance and thus that Fenwick was in a strong financial position with respect to Plaintiffs, which is all that mattered to them.  For these reasons, the

---

[3] To the extent that Plaintiffs dispute taking judicial notice of the SEC filing specifically, their argument is foreclosed by Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991).

fraud claim in Count Six is adequately pleaded.[4]

As to Count Seven, "[a] claim for fraudulent concealment must allege (1) nondisclosure of (2) material facts, in the face of (3) a duty to disclose, (4) scienter, (5) reliance, and (6) damages." In re New York Trap Rock Corp., 42 F.3d 747, 754 (2d Cir. 1994). The crucial element is the duty to speak:

> New York recognizes a duty by a party to a business transaction to speak in three situations: first, where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth; second, when the parties stand in a fiduciary or confidential relationship with each other; and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.

Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted and emphasis added). This fraud claim must also be pleaded with particularity under Rule 9(b), Fed.R.Civ.P. See Johnson v. Nextel Comm'ns, Inc., 660 F.3d 131, 143 (2d Cir. 2011).

---

[4] In its reply, Motorcar cites to two Southern District cases that are of no assistance to its position. Cougar Audio, Inc. v. Reich, 99 Civ. 4498 (LBS), 2000 WL 420546, at *6 & n.4 (S.D.N.Y. Apr. 18, 2000); Netto v. Rastegar, 12 Civ. 4580 (CM), 2012 WL 4336167, at *7 (S.D.N.Y. Sept. 20, 2012). Cougar Audio concerned a misstatement that was promissory in nature. Here, the alleged misstatement concerns a misrepresentation of an existing fact, i.e., Fenwick's financial situation. The plaintiff in Netto forebore in reliance on representations of a company's financial security, which the court found unjustifiable. Here, plaintiffs shipped almost $1 million of parts relying on Joffe's representations.

The fraudulent concealment claim is adequately pleaded under Rule 9(b).  The substance of this claim overlaps significantly with the prior fraud claim, as Count Six focuses on the affirmative misstatements Joffe made in the February 2013 Meeting and Count Seven focuses on the implicit omissions therein.  The only substantive difference is the "duty to speak," which is adequately pleaded here.  Principally, Plaintiffs directly inquired of Joffe about Fenwick's financial condition, thus triggering a duty to speak.  Moreover, Joffe had superior knowledge regarding Fenwick's finances, as established above.  Motorcar's arguments to dismiss Count Seven are essentially the same as those to dismiss Count Six, addressed above.  Accordingly, Count Seven shall not be dismissed.

### 3. Counts One, Four, and Five: Account Stated, Promissory Estoppel, and Unjust Enrichment

Motorcar moved to dismiss Count One (account stated), Count Four (promissory estoppel), and Count Five (unjust enrichment). In its reply, Motorcar abandoned this portion of its motion. Accordingly, this Opinion only briefly addresses the adequacy of these claims.

Under New York law,

[w]here an account is rendered showing a balance, the party receiving it must, within a reasonable time, examine it and object, if he disputes its correctness. If he omits to do so, he will be deemed by his silence

> to have acquiesced, and will be bound by it as an
> account stated, unless fraud, mistake or other
> equitable considerations are shown.

Shaw v. Silver, 943 N.Y.S.2d 89, 90 (1st Dep't 2012).

Plaintiffs' account stated claim is adequately pleaded.

Plaintiffs allege that, with respect to the purchase orders for

which they seek damages, they sent invoices and account

statements to Motorcar on multiple occasions showing an

outstanding balance.  Plaintiffs further allege that Motorcar

did not dispute the correctness of these accounts within a

reasonable time and, moreover, that Motorcar acknowledged these

outstanding balances at various points, including the February

2013 Meeting.

Under New York law, a claim for promissory estoppel has

three elements: "a clear and unambiguous promise; a reasonable

and foreseeable reliance by the party to whom the promise is

made; and an injury sustained by the party asserting the

estoppel by reason of his reliance."  Esquire Radio & Elecs.,

Inc. v. Montgomery Ward & Co., Inc., 804 F.2d 787, 793 (2d Cir.

1986) (citation omitted).  All three elements are pleaded here.

Plaintiffs allege that, after expressing concerns about being

paid for their orders, Motorcar's representatives promised on

multiple occasions (including but not limited to the February

2013 Meeting) to make payments on the completed purchase orders.

Plaintiffs allege that they reasonably relied on those promises

24

in continuing to supply Motorcar with automotive parts, and that
they were damaged as a result.

A plaintiff may recover for unjust enrichment in New York
after establishing three elements: (1) the defendant benefitted
(2) at the plaintiff's expense, and (3) equity and good
conscience require restitution.  Beth Israel Med. Ctr. v.
Horizon Blue Cross & Blue Shield of NJ, Inc., 448 F.3d 573, 586
(2d Cir. 2006).  The three elements for unjust enrichment are
also adequately pleaded.  Motorcar received benefits in the form
of automotive parts; this benefit came at Plaintiffs' expense,
as Plaintiffs were not paid for their goods and services.  It is
plausible that equity and good conscience require restitution.
Thus, Counts One, Four, and Five shall not be dismissed.


C. Joinder

Finally, Motorcar moves to dismiss under Rule 12(b)(7),
Fed.R.Civ.P., for failure to join Fenwick, which it contends is
a necessary and indispensable party.  Rule 12(b)(7) provides
that an action may be dismissed for failure to join a party
under Rule 19, Fed.R.Civ.P.

In ruling on such a motion, the court must first determine
whether an absent party is a "necessary" party under Rule 19(a),
Fed.R.Civ.P.  See MasterCard Int'l Inc. v. Visa Int'l Svc.
Ass'n, Inc., 471 F.3d 377, 385 (2d Cir. 2006).  Rule 19(a)

provides that the absent party should be joined, if feasible,
where:

> (1) in the person's absence complete relief cannot be
> accorded among those already parties, or (2) the
> person claims an interest relating to the subject of
> the action and is so situated that the disposition of
> the action in the person's absence may (i) as a
> practical matter impair or impede the person's ability
> to protect that interest or (ii) leave any of the
> persons already parties subject to a substantial risk
> of incurring double, multiple, or otherwise
> inconsistent obligations by reason of the claimed
> interest.

Fed.R.Civ.P. 19(a).

Where a court makes a threshold determination that a party
is "necessary" under Rule 19(a) and joinder of the absent party
is not "feasible" for jurisdictional or other reasons, the court
must then determine whether the party is "indispensable" under
Rule 19(b).  See Marvel Characters, Inc. v. Kirby, 726 F.3d 119,
131-32 (2d Cir. 2013).  "A court should take a flexible approach
when deciding what parties need to be present for a just
resolution of the suit."  CP Solutions PTE, Ltd. v. General
Electric Co., 553 F.3d 156, 159 (2d Cir. 2009) (per curiam)
(citation omitted).  Rule 19(b) specifies four factors that a
court must examine:

> (1) whether a judgment rendered in a person's absence
> might prejudice that person or parties to the action,
> (2) the extent to which any prejudice could be
> alleviated, (3) whether a judgment in the person's
> absence would be adequate, and (4) whether the
> plaintiff would have an adequate remedy if the court
> dismissed the suit.

26

CP Solutions, 553 F.3d at 159 (citing Fed.R.Civ.P. 19(b)).
"[W]hether a person is 'indispensable,' that is, whether a
particular lawsuit must be dismissed in the absence of that
person, can only be determined in the context of a particular
litigation." Curley v. Brignoli, Curley & Roberts Assocs., 915
F.2d 81, 90 (2d Cir. 1990) (quoting Provident Tradesmens Bank &
Trust Co. v. Patterson, 390 U.S. 102, 118 (1968)).

It is well-established that joint obligors are not
typically deemed to be indispensable parties under Rule 19(b),
Fed.R.Civ.P.  Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S.
826, 838 (1989); Universal Reinsurance Co., Ltd. v. St. Paul
Fire & Marine Ins. Co., 312 F.3d 82, 87 (2d Cir. 2002); Tehran-
Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-
Stratton, 888 F.2d 239, 243 (2d Cir. 1989); Greenleaf v. Safeway
Trails, Inc., 140 F.2d 889, 890-91 (2d Cir. 1944); see also
Charles Alan Wright & Arthur R. Miller, et al., 7 Fed. Prac. &
Proc. Civ. § 1613 (3d ed. 2013) ("Joint obligors thus typically
are treated as Rule 19(a) parties, but are not deemed
indispensable under Rule 19(b).").

Application of the Rule 19(b) factors confirms that Fenwick
is not an indispensable party in this case.  Because the
liability determination in this action will only bind Motorcar,
a judgment in this action -- either favorable or unfavorable

27

with respect to Motorcar -- will not prejudice Fenwick.  A
judgment against Motorcar would be adequate without Fenwick, as
Plaintiffs seek the full amount of their damages from Motorcar
in this action.  Finally, it is unlikely that Plaintiffs will be
able to recover their entire damages in the Fenwick bankruptcy.
Thus, in the present circumstances, proceeding without Fenwick
is permissible under Rule 19, Fed.R.Civ.P.

      Motorcar's only response is again premised on the argument
that it is alleged to be a guarantor.  This argument fails, for
the reasons explained above.


CONCLUSION
      Defendant's April 3, 2014 motion to dismiss the First
Amended Complaint is denied.


      SO ORDERED:

Dated:   New York, New York
         June 6, 2014


                         _____
                              DENISE COTE
                         United States District Judge


28